FILED

10/31/2022

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
October 11, 2022 Session

**STATE OF TENNESSEE v. JEFFREY L. CROWE**

**Appeal from the Criminal Court for Davidson County**
**No. 2019-D-3053     Cheryl A. Blackburn, Judge**

_____

**No. M2022-00072-CCA-R3-CD**
_____

Defendant, Jeffrey L. Crowe, was indicted by the Davidson County Grand Jury for reckless aggravated assault with a deadly weapon, second offense DUI by impairment, second offense DUI per se, and resisting arrest. Following a bench trial, Defendant was convicted of the charged offenses and sentenced to an effective sentence of two years to be suspended on probation after serving 32 days incarcerated. In this appeal as of right, Defendant contends that the evidence was insufficient to support his convictions; that the trial court erred when it restricted Defendant's cross-examination of the victim; and that the trial court committed plain error when it allowed hearsay testimony. Having reviewed the entire record and the briefs and arguments of the parties, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and JILL BARTEE AYERS, JJ., joined.

Manuel B. Russ (on appeal and motion for new trial); Alexa Spata (at trial); Nashville, Tennessee, for the appellant, Jeffrey L. Crowe.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Assistant Attorney General; Glenn Funk, District Attorney General; and Charles Yarbrough, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Facts*

On the night of February 10, 2019, Hasan Zakhoy was stopped at a red light on Nolensville Road when Defendant's vehicle hit his car from behind. Mr. Zakhoy was taken by ambulance to Southern Hills Hospital. Mr. Zakhoy testified that he had x-rays at the hospital and was sent home with pain medication. He was at the hospital for "a couple of hours[.]" He then followed up with his regular physician and went to physical therapy. Mr. Zakhoy testified that he still suffered hand and neck pain at the time of trial. On cross-examination, Mr. Zakhoy acknowledged that he did not remember much about the accident. He testified, "I know I got in [an] accident, and somebody hit me in the back. That's it."

Metro Nashville Police Department ("MNPD") Officer Ryan Coll was the second officer to arrive at the scene. Officer Coll observed Defendant's work truck behind Mr. Zakhoy's car, and both vehicles were still on the roadway. Officer Coll determined that Defendant's vehicle struck Mr. Zakhoy's vehicle from behind. Officer Coll testified that he checked on the occupants of Mr. Zakhoy's car and that "[f]or the most part, they said they were okay." He did not recall what Mr. Zakhoy stated his injuries were, but he recalled that Mr. Zakhoy requested medical assistance.

Officer Coll testified that Defendant "just kept getting in and out of the car." Officer Coll described Defendant as "extremely irritated" and "hostile" toward the police officers. Officer Coll testified that Defendant "was impaired, he had slurred speech, his eyes were glossed over." Officer Coll could smell an odor of alcohol coming from Defendant. Based on Defendant's behavior, the other officer at the scene "decided it would be best if he were to put handcuffs on [Defendant] so he could confine him, control where he goes, make sure he doesn't get back in the car and drive away somewhere." Defendant then "started to resist arrest," and Officer Coll assisted in placing Defendant in custody. Officer Coll testified that Defendant was "confrontational" and "belligerent."

When MNPD Sergeant Paul Stein arrived at the scene, Defendant was handcuffed and seated in the driver's seat of his own vehicle. Sergeant Stein spoke to Defendant and noticed an "obvious odor" of alcohol coming from Defendant's breath and that Defendant's "eyes were bloodshot and watery." Sergeant Stein testified that Defendant's speech was slurred and he was unsteady on his feet. Sergeant Stein walked Defendant toward his patrol car, and Defendant "lean[ed] back and put his feet out in front of him to where we had to physically assist him" walking to the car. Sergeant Stein testified that he did not attempt to conduct field sobriety tests on Defendant because of Defendant's aggressive behavior.

A video recording depicting Defendant seated in the backseat of Sergeant Stein's patrol car was entered into evidence and played for the jury. Sergeant Stein read an implied consent form to Defendant. Defendant initially agreed to take a breathalyzer test and later refused. Sergeant Stein asked Defendant to step out of the backseat in order to search him

before transporting him to booking, and Defendant "became verbally abusive and combative." Sergeant Stein "made the determination that it was safer just to seat belt him in and transport him." Defendant then "attempted to push out of the vehicle," and Sergeant Stein "ended up putting [his] hands on him, laying him on the vehicle, told him to calm down and stop resisting." While Sergeant Stein was transporting Defendant, Defendant became "extremely agitated and began hitting his head into the divider, causing a small cut [to his forehead]."

Sergeant Stein subsequently obtained a warrant for a blood draw and transported Defendant to General Hospital, where Defendant's blood was drawn. Sergeant Stein testified that "a little less than two hours" elapsed between the time he arrived at the scene of the accident and the time Defendant's blood was drawn. Sergeant Stein testified that the average person metabolizes alcohol at a rate of .015 grams per hour and that a person's metabolization rate depends on a number of factors. It was the sergeant's opinion that Defendant "was obviously impaired."

The parties stipulated the chain of custody of the blood. Logan Pierce, of the MNPD Crime Lab, testified that Defendant's blood alcohol content was .307 percent. The toxicology report also determined that Trazadone was present in Defendant's system. Mr. Pierce testified that a person with a blood alcohol content of .307 would typically show "signs of potential aggravation, irritability, stupor, loss of motor skills and function such as blurred vision, slurred speech, vomiting, incontinence at times, and for some people, it could even lead to essentially passing out."

Brandi Smith testified on behalf of Defendant. She had been friends with Defendant for about three years at the time of trial. On the night of the wreck, Defendant picked her up after she had been arguing with her roommate. Defendant did not appear intoxicated to Ms. Smith when he picked her up. Ms. Smith testified that they had only been driving about three minutes when the wreck happened. After the wreck, Defendant "chugged" an almost full bottle of Fireball in an effort "to hide evidence." Ms. Smith testified that it was "raining hard" and that she did not remember hitting Mr. Zakhoy's car. She thought they had just hit a curb. She testified that she was "on medication" at the time of the wreck and did not "remember this hardly well at all."

Defendant did not testify. At the conclusion of the bench trial, the trial court found Defendant guilty of the charged offenses. The trial court merged Defendant's DUI convictions, and following a sentencing hearing, the trial court imposed an effective sentence of two years to be suspended on probation after serving 32 days incarcerated plus 20 days in treatment. Defendant filed a motion for new trial, asserting that the evidence was insufficient to support his convictions for DUI and aggravated assault with a deadly weapon. Defendant thereafter filed an amended motion for new trial, arguing that the trial

court improperly restricted Defendant's cross-examination of Mr. Zakhoy and that the trial court improperly allowed hearsay testimony by Officer Coll. Following a hearing on Defendant's motion for new trial, the trial court entered a written order denying the motion. This timely appeal followed.

## *Analysis*

### *I. Sufficiency of the Evidence*

Defendant argues that the evidence was insufficient to support his convictions for reckless aggravated assault with a deadly weapon and DUI. Specifically, Defendant claims that the State failed to prove that he "used or displayed a deadly weapon" or that he was under the influence of an intoxicant at the time of the accident. The State responds that the evidence was sufficient to support both convictions.

On appeal, a conviction removes the presumption of the defendant's innocence and replaces it with one of guilt, so that the defendant carries the burden of demonstrating to this Court why the evidence will not support the findings of the trier of fact. *See State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *See State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). In a bench trial, the trial judge, as the trier of fact, must resolve all questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence. *State v. Ball*, 973 S.W.2d 288, 292 (Tenn. Crim. App. 1998). The trial judge's verdict carries the same weight as a jury verdict. *State v. Hatchett*, 560 S.W.2d 627, 630 (Tenn. 1978); *see also State v. Holder*, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999).

The guilt of a defendant, including any fact required to be proven, may be predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *See State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). The standard of review for the sufficiency of that evidence is the same whether the conviction is based upon direct or circumstantial evidence. *See State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

## A. Reckless Aggravated Assault

"A person commits aggravated assault who . . . [r]ecklessly commits an assault as defined in § 39-13-101(a)(1), and . . . [c]auses serious bodily injury to another; or . . . [u]ses or displays a deadly weapon." T.C.A. § 39-13-102(a). "'Reckless' means that a person acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of, but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." *Id*. § 39-11-106(a)(31). In this case, "'[d]eadly weapon' means . . . [a]nything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id*. § 39-11-106(a)(5).

Defendant, citing *State v. McGouey*, 229 S.W.3d 668, 672 (Tenn. 2007), contends that the evidence was insufficient to support his conviction for reckless aggravated assault with a deadly weapon because the proof did not show that he intentionally used his vehicle as a deadly weapon. In *McGouey*, our supreme court held, "If an item is not a deadly weapon per se, it will only be considered a deadly weapon if the defendant in a particular case actually used or intended to use the item to cause death or serious bodily injury." *Id*. at 674. Following *McGouey*, this Court reiterated in *State v. Dempsey Jackson* "that an accused can be convicted of aggravated assault due to the manner in which the accused operated a motor vehicle." *State v. Dempsey Jackson*, No. W2007-01629-CCA-R3-CD, at *8, 2009 WL 2868773 (Tenn. Crim. App., Sept. 3, 2009) (citing *State v. Tate*, 912 S.W.2d 785, 787 (Tenn. Crim. App. 1995)), *perm. app. denied* (Tenn. Mar. 15, 2010). "While vehicles are not always considered deadly weapons, 'the method of [the vehicle's] use is the controlling factor' in making this case-by-case determination." *State v. Randall Boaz*, No. M2015-01532-CCA-R3-CD, 2016 WL 4224983, at *3 (Tenn. Crim. App. Aug. 9, 2016) (quoting *State v. Scott W. Long*, 1993 WL 328055, at *3 (Tenn. Crim. App. Aug. 19, 1993), *perm. app. denied* (Tenn. Nov. 8, 1993)), *no perm. app. filed*.

Defendant argues that the evidence failed to establish that he intended to use his vehicle in a manner that was likely to cause death or serious bodily injury. However, in considering Tennessee Code Annotated section 39-11-106(a)(5)(B), the correct standard is not determining the actual intent to cause death or serious bodily injury with the vehicle, but rather if the defendant used or intended to use the vehicle *in a manner capable of* causing death or serious bodily injury. T.C.A. § 39-11-106(a)(5)(B) (emphasis added); *see State v. Leslie A. Pryor*, No. M2005-01429-CCA-R3-CD, 2006 WL 2563438, at *6 (Tenn. Crim. App. Aug. 31, 2006) ("The defendant misapprehends the law when he argues that if he did not intentionally use the truck to harm anyone, it cannot be considered a deadly weapon."), *no perm. app. filed*.

Defendant does not contest that he was operating his vehicle in a manner that was *capable* of causing serious bodily injury or death. Defendant's vehicle crashed into the back of Mr. Zakhoy's vehicle. Defendant appeared very intoxicated to both officers who arrived on the scene. Defendant was hostile and irritated, he had slurred speech and glossy eyes, he was unsteady on his feet, and both officers testified that they could smell an obvious odor of alcohol coming from Defendant. Mr. Zakhoy testified that he suffered injuries as a result of the collision.

Based on our review of the record, we conclude that a reasonable trier of fact could conclude beyond a reasonable doubt that Defendant operated his motor vehicle in a manner capable of causing death or serious bodily injury. Defendant is not entitled to relief on this issue.

## B. *Driving Under the Influence*

Next, Defendant argues that the evidence was insufficient to establish that he was intoxicated at the time of the accident, asserting that the only evidence of when Defendant consumed any alcohol was the testimony of Ms. Smith that after the wreck Defendant "chugged" a bottle of Fireball "to hide evidence."

Defendant was convicted under Tennessee Code Annotated section 55-10-401(a)(1)(2), which states:

> (a) It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, . . . while:
>
> (1) Under the influence of any intoxicant . . . ;
>
> (2) The alcohol concentration in such person's blood or breath is eight-hundredths of one percent (.08%) or more.

T.C.A. § 55-10-401(a)(1)(2).

Here, Defendant waived a jury trial and proceeded to a bench trial. The trial judge, as the trier of fact, evaluated the credibility of witnesses, determined the weight given to testimony, and resolved all conflicts in the evidence. *State v. Steven Kelly*, No. M2018-00659-CCA-R3-CD, 2019 WL 920361, at *2 (Tenn. Crim. App. Feb. 25, 2019), *perm. app. denied* (Tenn. Apr. 11, 2019). The trial court found "incredulous" Ms. Smith's testimony that Defendant consumed nearly a full bottle of Fireball immediately after the crash.

The evidence, viewed in the light most favorable to the State, showed that officers detected an odor of alcohol on Defendant's breath and Defendant appeared to be intoxicated. The toxicology report indicated that Defendant had a blood alcohol content of .307 percent approximately two hours after the accident. The evidence was sufficient to support Defendant's DUI conviction. Defendant is not entitled to relief.

## II. *Limitation on Cross-Examination*

Defendant contends that the trial court improperly limited his cross-examination of Mr. Zakhoy when the court determined that questions concerning a possible civil action were not relevant. The State argues that Defendant waived the issue for failing to make an offer of proof; alternatively, the State argues the trial court properly exercised its discretion in concluding that the evidence was not relevant; alternatively, the State argues any error in exclusion of the evidence was harmless beyond a reasonable doubt.

On cross-examination, defense counsel asked Mr. Zakhoy if a civil lawsuit had been filed. The State objected on the basis of relevance, and the trial court sustained the objection. Defense counsel did not make any argument as to the relevance or ask to make a proffer of evidence at trial. Defendant raised the issue in his motion for new trial. In denying Defendant's motion for new trial, the court found that "any information about a potential civil suit was irrelevant to whether the State has established the essential elements of the offense."

The State submits that because Defendant failed to make an offer of proof regarding the evidence, he has waived the issue. *See State v. Sims*, 45 S.W.3d 1, 15 (Tenn. 2001) (determining failure to make an offer of proof regarding witness testimony waived confrontation issue). Tennessee Rule of Evidence 103 provides:

(a) Effect of Erroneous Ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

(1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection if the specific ground was not apparent from the context; or

(2) Offer of Proof. In case the ruling is one excluding evidence, the substance of the evidence and the specific evidentiary basis supporting admission were made known to the court by offer or were apparent from the context.

Once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal.

Tenn. R. Evid. 103(a). Defendant failed to make an offer of proof, and it is not apparent from the context what Defendant intended to show by introducing the evidence. In his amended motion for new trial, Defendant merely asserts that his "right to inquire into Mr. Zakhoy's potential pecuniary interest from the wreck was a proper avenue of cross-examination and the trial court erroneously restricted it." Defendant did not address the issue at the hearing on the motion for new trial. Accordingly, we conclude that the issue is waived.

### III.  Hearsay

Defendant argues that it was plain error for the trial court to allow the State to elicit testimony from Officer Coll recounting "his entire conversation after the wreck with Mr. Zakhoy which was clearly hearsay without an exception." The State asserts that Defendant has waived consideration of the issue by failing to make a contemporaneous objection at trial and that he has failed to establish that plain error exists. We agree with the State.

Rule 36(a) of the Tennessee Rules of Appellate Procedure states that "[n]othing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." "The failure to make a contemporaneous objection constitutes waiver of the issue on appeal." *State v. Gilley*, 297 S.W.3d 739, 762 (Tenn. Crim. App. 2008). However, "when necessary to do substantial justice," this Court may "consider an error that has affected the substantial rights of a party" even if the issue was waived. Tenn. R. App. P. 36(b). Such issues are reviewed under plain error analysis. *State v. Hatcher*, 310 S.W.3d 788, 808 (Tenn. 2010).

Plain error relief is "limited to errors that had an unfair prejudicial impact which undermined the fundamental fairness of the trial." *State v. Adkisson*, 899 S.W.2d 626, 642 (Tenn. Crim. App. 1994). In order to be granted relief under plain error relief, five criteria must be met: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the accused must have been adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is "necessary to do substantial justice." *Id.*, 899 S.W.2d at 640-41; *see also State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000). When it is clear from the record that at least one of the factors cannot be established, this Court need not consider the remaining factors. *Smith*, 24 S.W.3d at 283. Defendant bears

the burden to show that he is entitled to plain error relief. *State v. Bledsoe*, 226 S.W.3d 349, 355 (Tenn. 2007).

Under the Tennessee Rules of Evidence, "hearsay" is any statement, other than one made by the declarant while testifying at trial or in a hearing, offered into evidence to prove the truth of the matter asserted. Tenn. R. Evid. 801. Hearsay statements are not admissible unless they fall within one of the evidentiary exceptions or some other law renders them admissible. Tenn. R. Evid. 802.

During the State's direct examination of Officer Coll, the prosecutor asked, "What did you learn in speaking with [Mr. Zakhoy]?" Officer Coll answered,

> So he had claimed that he had minor injuries. I don't recall what type of injuries they were, but I remember him claiming he had a small injury and calling for a medic for him. Other than that, he basically told me he was sitting at a red light, he got rear[-]ended, he got hit from behind, and he didn't really know what happened after that. But my interaction with him was very pleasant. The only thing he requested was a medic.

Defendant failed to object to this testimony. In fact, on cross-examination, defense counsel asked Officer Coll, "do you remember what kind of pain [Mr. Zakhoy] was saying he was having?" In its order denying Defendant's motion for new trial, the trial court observed that "[d]efense counsel's query about Mr. Zakhoy's statement to the police appears to be part of the trial strategy to impeach Mr. Zakhoy's testimony about his injuries." Because defense counsel elicited the same testimony on cross-examination, we cannot determine that counsel did not waive the issue for tactical reasons or that a substantial right of the accused was adversely affected. Accordingly, Defendant has failed to establish plain error.

## CONCLUSION

Based on the foregoing, the judgments of the trial court are affirmed.

_____
TIMOTHY L. EASTER, JUDGE

- 9 -